1
2
3
4
5
6
7
8
9
10
11
12
13
14

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JONATHAN BOOTHE,

               Petitioner,

    v.

UNITED STATES OF AMERICA,

               Respondent.

Case No. C18-331RSL

ORDER DENYING
PETITIONER'S § 2255
MOTION

15
16
17
18
19
20

     This matter comes before the Court on petitioner's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on the basis of ineffective assistance of counsel, Dkt. # 1, and his separately filed motion requesting a Bureau of Prisons ("BOP") transfer and appointment of counsel, Dkt. # 9. Having considered the parties' memoranda, the evidence, and the remainder of the record, the Court DENIES petitioner's motions for the reasons set forth below.

21

## I.    FACTUAL BACKGROUND

22
23
24
25
26
27
28

     Petitioner Jonathan Boothe was arrested on July 31, 2013 after police discovered fraudulently purchased vehicles, a firearm, and a large amount of materials associated with identity theft in and around his Eastlake motel room. See United States v. Boothe, No. CR14-42RSL (W.D. Wash.), Dkt. # 11 (hereafter "CR Dkt."). Petitioner was then released pending an indictment, which was filed on February 19, 2014 and included thirteen separate counts of bank fraud, conspiracy, aggravated identity theft, and felon in possession of a firearm. Id. A warrant was issued for his arrest on February 19, 2014. CR Dkt. # 19. Petitioner remained a fugitive

until the warrant was executed during a traffic stop in Arkansas on May 5, 2014. CR Dkt. # 113 at 7.

Petitioner was returned to the Western District of Washington and Michele Shaw was appointed as his first counsel on June 5. 2014. CR Dkt. # 40. On October 16, 2014, Ms. Shaw moved to withdraw per petitioner's request. CR Dkt. # 78 at 2. Timothy Lohraff was appointed as petitioner's replacement counsel on October 31, 2014. CR Dkt. # 82. On June 21, 2015, he, too, filed a motion to withdraw. CR Dkt. # 142. Finally, on June 23, 2015, Gilbert Levy was appointed as petitioner's counsel until his case was closed following a guilty plea on June 3, 2016. CR Dkt. # 149.

At the time of each withdrawal and reappointment of counsel, petitioner had been attempting to negotiate a plea agreement with the government. See Dkt. # 4. In a letter addressed to petitioner dated August 13, 2014, Ms. Shaw informed her client that "[t]he Government has agreed to make this a global resolution. They would contact other federal jurisdictions that may have open investigations on you . . . . Secondly, the Government is willing to assist us with quashing State warrants that you . . . have." Id. at 24. Petitioner declined to enter into this agreement. Id. at 37.[1] In a letter addressed to Mr. Levy dated June 29, 2015, petitioner claims that his second counsel Mr. Lohraff had failed to negotiate the "Global Resolution" of all ongoing investigations, pending cases, and outstanding warrants into the terms of the second possible plea agreement. Petitioner requested that this be included in future iterations. Id. at 25.

On October 8, 2015, before petitioner had accepted any agreement, Mr. Levy notified petitioner that "[a]lthough not part of the plea agreement, [AUSA] Woods has informed me that he will seek only a two level upward adjustment for number of victims. . . . I believe that we have hit an end point in the negotiations and that further efforts to

---

[1] This letter titled "Transfer Memorandum," sent by Ms. Shaw to Mr. Lohraff, outlines the status of negotiations on a plea agreement with the government. In it, Shaw explains that the government's "second proposal . . . is available until the pre-trial motions date of November 3, 2014." Dkt. # 4 at 37. Because petitioner did not assent to the government's conditions and plead guilty by that date, the offer expired on its own terms.

secure a better offer from the government are unlikely to be productive." Id. at 13. At no time did petitioner formally accept any agreement that included conditions regarding upward adjustments, global resolutions, or the quashing of outstanding warrants.

On November 30, 2015, petitioner pleaded guilty to single counts of bank fraud, aggravated identity theft, and being a felon in possession of a firearm. CR Dkt. # 174 ¶ 1. Under the plea agreement, the government stated it would recommend (1) a sentence of either nine years or the low-end of the applicable Guidelines range, whichever was lower; (2) that the Court run petitioner's sentence concurrent to "any undischarged sentence" from King County; and (3) that petitioner be credited for the 5 months he spent in King County custody after July 31, 2013. Id. ¶ 8. No other concessions were made.

During his plea hearing, petitioner and the Honorable James P. Donohue, United States Magistrate Judge, had the following exchange:

> THE COURT: And the Court has also indicated -- excuse me, the government has also stated that it will recommend that the court run the sentence concurrent to any undischarged sentence from King County? Is that your understanding?
> THE DEFENDANT: Yes, sir.
> THE COURT: And concurrent means that they would run the same time; is that your understanding?
> THE DEFENDANT: Yes.
> THE COURT: And if the -- if the court doesn't adopt that recommendation, it might be that they run at different times where that one might run before the other one begins. Do you understand that?
> THE DEFENDANT: Yeah. Well the hope is that that will be cleared up before any of this gets sentenced, actually. I am hoping that the -- the discussion that I have had is that we are going to get the warrants quashed --
> THE COURT: Okay.
> THE DEFENDANT: -- before sentencing.
> THE COURT: But do you understand that there is no guarantee of that?
> THE DEFENDANT: Yeah, no.
> THE COURT: And are you still planning -- still prepared to go forward with the sentence --
> THE DEFENDANT: Yeah.
> THE COURT: -- now, recognizing there is an uncertainty in that regard?
> THE DEFENDANT: Yes.

CR Dkt. # 198 at 17.

The government filed its sentencing memorandum on May 27, 2016, in which it made all recommendations required by the plea agreement. Dkt. # 182. By June 3, 2016, the parties were aware that, although there existed an outstanding warrant for petitioner's arrest in King County, he was not subject to any undischarged sentence. Dkt. # 7 at 5. Additionally, the presentence report ("PSR") included a 2-level increase for inclusion of ten or more victims (the report identified at least 107 victims), and a 12-level increase for the involvement of an intended loss of $250,000 to $550,000. CR Dkt. # 180 at 8.

At sentencing, the adjustment for number of victims was not contested by the defense. However, both parties submitted arguments as to the amount of financial loss properly attributable to petitioner's conduct. See CR Dkt. # 197. The defense urged the Court to adopt a 10-level increase for an overall score of 17 instead of the 12-level increase suggested by the government, which contributed to a total score of 23. Id.

The Court eventually found that the government's calculation was accurate, stating:

All right. So, you know, this -- I sometimes get frustrated when we're talking about loss amount, obstruction, you know, identity devices, and stuff like that. And then even if we get down to Mr. Levy's proposed guideline range, which, for the sake of argument, I will do -- although I think it's scored correctly as a 23, Criminal History Category VI -- even if I scored it as a 17, Criminal History Category VI, with a 51-to-63 range, I would come up with the same decision, and that is, I'm going to impose, on the front two counts, 53 months of confinement on Counts 1 and 2 -- or excuse me, 3 and 13.

Id. Petitioner was then sentenced to a 72-month term of imprisonment. CR Dkt. # 189.

During his incarceration, petitioner and his counsel attempted to resolve the matter of his outstanding King County warrant with the Washington Department of Corrections ("DOC"). See CR Dkt. # 201-1. However, the DOC has explained repeatedly that nothing can be done about the warrant until petitioner appears, in person, for a hearing at a Washington DOC facility. Id. at 21.[2] Petitioner complains that, if the warrant is not

_____

[2] Boothe is currently being held at FCI Sheridan in the State of Oregon.

quashed, he will be unable to complete the Residential Drug Abuse Program and will not qualify for placement at the Residential Reentry Center. CR Dkt. # 201.

Consequently, on February 25, 2018, petitioner filed the § 2255 petition now before this Court, in which he requests that the Court vacate, set aside, or correct his prior sentence on the grounds of ineffective assistance of counsel. Dkt. # 1. In his petition, Boothe alleges: (1) that his counsel failed to object to the government's breach of the plea agreement for failing to recommend that the Court run the sentence "concurrent with the relevant conduct case out of King County," id. at 4; (2) that his counsel failed to "correct the PSR" to reflect the Court's Guidelines calculations, id. at 5; (3) that his counsel failed either to object to or challenge the "number of victims" sentencing enhancement, id. at 6; (4) that his counsel "promised to ensure a Global Resolution of all pending criminal matters," as reflected by comments he made at the change of plea hearing, id. at 8; (5) that his counsel failed to object to the "Restitution Stipulation" within the plea agreement, id. at 9; (6) that his counsel failed to negotiate a conditional plea agreement, reserving his right to pursue his failed suppression motion on appeal, id.; and (7) that his counsel should not have "waived the second suppression hearing" regarding the Arkansas search, id.

The government claims all of petitioner's claims lack merit. Dkt. # 7 at 15.

## II. DISCUSSION

In order to succeed on a claim of ineffective assistance of counsel, a defendant must establish two components. First, he must show that his attorney "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 687 (1984). This requires petitioner to demonstrate that his counsel's performance fell below an objective standard, defined by the "reasonably competent attorney." Id. In doing so, he must overcome the presumption that the challenged action was simply sound trial strategy under the circumstances. Id. at 689. In its evaluation, the Court recognizes that counsel is also "strongly presumed to have rendered

adequate assistance and made all significant decisions in the exercise of reasonable professional judgement." Id. at 690.

Second, petitioner must also establish that this inadequate performance resulted in actual prejudice to his case. Id. With regard to ineffective counsel alleged in the sentencing phase, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, a lesser sentence would have been imposed. Glover v. United States, 531 U.S. 198, 203–04 (2001).

**1.    Breach of the Plea Agreement**

Petitioner's first assertion is that the government breached the plea agreement by failing to recommend that "the Court run the Federal sentence concurrent with the [r]elevant conduct case out of King County, WA." Dkt. # 1 at 5. This assertion lacks merit because the government was not bound under the plea agreement to recommend such a provision. Rather, the government agreed to recommend that the Court run petitioner's sentence "concurrent to any *undischarged sentence* from King county [sic]," CR Dkt. # 174 ¶ 9 (emphasis added), and subsequently fulfilled that obligation in its sentencing memorandum to the Court, CR Dkt. # 182 at 10. Whatever beliefs he holds about the nature of his outstanding warrant, petitioner was not subject to any undischarged sentences at the time of the agreement.  Petitioner was credited, pursuant to the plea agreement, for the 5 months he served in King County custody prior to his sentencing in the present case. Id. ¶ 9. Thus, his sentence in that case has already been discharged. Further, his outstanding warrant does not qualify as an undischarged sentence, because no sentence has yet been imposed in that case. Therefore, because the government carried out its obligation under the plea agreement, and because petitioner was not subject to any undischarged sentence from King County, petitioner's first claim is meritless.

**2.    Failure to Correct the PSR**

Second, petitioner claims that the "sentencing judge calculated my guidelines much lower than the PSR investigator recommended and trial counsel did not move to correct the PSR." Dkt. # 1 at 5. The presentence investigation report calculated petitioner's offense level as 23 and his

criminal history category as VI. CR Dkt. # 180. This yielded a Guidelines range of 92 to 115 months. CR Dkt. # 179 at 1. At sentencing, the Court stated:

> [E]ven if we get down to Mr. Levy's proposed guideline range, which, for the sake of argument, I will do -- although I think it's scored correctly as a 23, Criminal History Category VI -- even if I scored it as a 17, Criminal History Category VI, with a 51-to-63 range, I would come up with the same decision, and that is, I'm going to impose, on the front two counts, 53 months of confinement . . . plus 24 months on Count 11, which equals a total of 77, and we will give him credit for the five months. And that lowers it to 72 months, which is a six-year sentence.

CR Dkt. # 197 at 15. The Court adopted the PSR calculation, but imposed a sentence lower than the recommended Guidelines range. Regardless, with respect to this claim, petitioner does not state any cognizable error on the part of his trial counsel, as there does not seem to be any mistake in the PSR that needed to be corrected. It is, likewise, unclear what petitioner is alleging counsel should have done even if the Court calculated a lower Guidelines range. Therefore, petitioner's second claim is meritless.

**3.     Failure to Object to the Number of Victims Upward Adjustment**

Petitioner further claims that his "[c]ounsel failed to object to, or otherwise challenge the Number of Victims upward adjustment to the Guidelines." Dkt. # 1 at 6. At sentencing, petitioner received a 2-level increase to his overall offense-level calculation pursuant to the U.S. Sentencing Guidelines § 2B1.1(b)(2)(A) because his offense involved ten or more victims. CR Dkt. # 180 at 8. Trial counsel made no objection to the increase at sentencing. Petitioner argues that this adjustment was improper because the only institution that suffered financial harm as a result of his crimes was Boeing Employees' Credit Union ("BECU"). Dkt. # 4 at 16–17. Accordingly, he claims that counsel should have objected to the adjustment, since his offense involved only one victim, not ten or more. Petitioner's argument is based on a misunderstanding of the word "victim," which, for the purposes of identity fraud, is defined as "any individual whose means of identification was used unlawfully or without authority." U.S. Sent'g

Guidelines Manual § 2B1.1 cmt. n.4(E) (U.S. Sent'g Comm'n 2016).[3] Considering this, the evidence plainly establishes that the number of victims affected by petitioner's crimes exceeds ten. See Dkt. # 7 Ex. D.[4] Therefore, counsel did not err in his decision to refrain from objecting to the adjustment, since it was so clearly applicable. Accordingly, petitioner's third claim is meritless.

**4.      Failure to Ensure a Global Resolution**

Petitioner's fourth claim states that his counsel failed to "follow through" on a promise to "ensure a thorough Global Resolution of all pending criminal matters relating to these charges, to include the state warrants." Dkt. # 1 at 8. Petitioner notes that he mentioned this promise on record at his change of plea hearing. CR Dkt. # 198. However, during that proceeding, petitioner also affirmed that he understood a global resolution was not included in the plea agreement, and thus, was not guaranteed. Id. at 17. Furthermore, the record does not show that petitioner was ever promised such a resolution by his counsel. An August 2014 letter from Ms. Shaw to petitioner indicates the government had agreed to a global resolution conditional upon his pleading guilty, see Dkt. # 4 at 24, but petitioner did not accept this plea agreement and this provision was apparently removed from the proposed plea agreement after Ms. Shaw's withdrawal, id. at 25, 27, 31. Nevertheless, petitioner's assent to the plea agreement he ultimately accepted months later with the knowledge that such an outcome was not guaranteed, indicates his awareness that no binding promise had been made. Petitioner's fourth claim is meritless.

---

[3]      Documents submitted to the Court by petitioner indicate that he was made aware of this definition. Dkt. # 4 at 21.

[4]      "[O]fficers seized more than 90 pages of computer-printed lists or personal identifiable information, such as names, addresses, phone numbers, email addresses, bank account numbers, Social Security numbers, and credit card information, including card numbers, expiration dates, and three-digit security code numbers" from petitioner's motel room, where he was arrested in July of 2013. Dkt. # 7 Ex. D at 66.

**5. Failure to Object to Restitution Stipulation**

Petitioner claims that "[c]ounsel failed to object to [the] Restitution Stipulation within [the] Plea Agreement, wherein there is no estimate of the potential amount of Restitution." Dkt. # 1 at 9. With respect to restitution, the plea agreement made no such stipulation about the amount to be paid and instead reads: "[d]efendant shall make restitution in any amount to be determined at sentencing." CR Dkt. # 174 ¶ 7. This is presumably due to the fact that the amount in restitution largely depended upon the amount of financial loss incurred by petitioner's victims, which at that time was still unclear. Both parties argued this point at sentencing and there is nothing in the record suggesting that petitioner's counsel made any unprofessional error in advocating for his client on this issue. See CR Dkt. # 197. Petitioner's fifth claim is meritless.

**6. Failure to Negotiate a Conditional Plea Agreement**

Petitioner's sixth claim is that "[c]ounsel failed to negotiate a Conditional Plea Agreement" that reserved his right to appeal this Court's decision to deny petitioner a suppression hearing. Dkt. # 1 at 9. Petitioner fails to demonstrate how the inability to negotiate a conditional agreement under the circumstances constitutes performance that falls below an objective standard. Petitioner's counsel successfully negotiated a plea agreement under which the government agreed to recommend either a 9-year sentence or the bottom of the Guidelines range, whichever was lower, CR Dkt. # 174 ¶ 8, and dismiss ten of the thirteen counts against him, id. ¶ 11. Considering petitioner's consistent resistance to the advice of his three attorneys, as well as his extensive criminal history, counsel's ability to secure such a favorable outcome for his client contradicts any claim that his performance was objectively unreasonable.

Further, petitioner's allegations do not overcome the presumption that, under the circumstances, counsel's decision not to insist on preserving petitioner's right to appeal was made in the exercise of reasonable professional judgment. Strickland, 466 U.S. at 690. It is not clear that pressing this point would have resulted in a more favorable result. Counsel's inability to negotiate a conditional plea agreement was not unprofessional error and petitioner's sixth claim is meritless.

**7. Waiver of the Arkansas Traffic Stop Suppression Hearing**

Petitioner's final claim is that "[c]ounsel should not have waived the second suppression hearing, regarding the Arkansas traffic stop." Dkt. # 1 at 9. Petitioner alleges that counsel made this decision without his "written consent." Dkt. # 8 at 3. However, "[t]rial management is the lawyer's province" in which counsel is expected to provide "his or her assistance by making decisions such as 'what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence.'" McCoy v. Louisiana, 138 S. Ct. 1500, 1508 (2018) (quoting Gonzalez v. United States, 553 U.S. 242, 248 (2008)). Petitioner's permission was not required and counsel's decision to withdraw the evidentiary objection is presumed to be sound trial strategy. Petitioner has failed to overcome this presumption. Dkt. # 8 at 3.[5] Petitioner's final claim is meritless.

**8. Request for BOP Transfer and Appointment of Counsel**

In addition, petitioner also requests a Court Order directing BOP to return him to the federal detention center at SeaTac, and that the Court appoint him counsel to assist in further filings and proceedings in his § 2255 petition. Dkt. # 9. Petitioner is currently incarcerated at the Federal Correctional Institution in Sheridan, Oregon and wishes to be transferred for the purpose of assisting his mother, who he reports has been diagnosed with stage IV breast cancer. 18 U.S.C. § 3621 grants BOP discretion to "direct the transfer of a prisoner from one penal or correctional facility to another." Id. § 3621(b)(5). It also states that "[a]ny order,

---

[5] Petitioner submits that he suffered prejudice due to counsel's withdrawal of the second motion to suppress evidence, alleging that the evidence (1) was used by the government to secure a less-favorable plea agreement; and (2) contributed to the Court's finding of financial loss at sentencing, which resulted in a greater upward adjustment. Petitioner's first contention is unsupported by the record. Under the plea agreement, petitioner agreed to render a guilty plea to only three of thirteen alleged counts. See CR Dkt. # 174. None of these three counts, as outlined in the agreement, was supported by evidence seized during the Arkansas traffic stop. Id. Petitioner's second allegation is similarly baseless. Nothing in the record demonstrates that the evidence obtained pursuant to the Arkansas stop was used to calculate the loss amount determined at sentencing. In fact, the government, in presenting a loss calculation that was subsequently verified by the defense, CR Dkt. # 197 at 12 ¶ 9–11, excluded "a large class of victims and potential loss both from the hotel room and the Arkansas stop," id. at 6 ¶ 13–14. Therefore, petitioner was not prejudiced by counsel's decision to withdraw the motion.

recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment of that person." Id. As such, the Court has no authority to direct BOP to transfer any inmate and petitioner's request is denied.

With respect to petitioner's request for appointment of counsel, it is generally the case that a person has no right to counsel in civil actions. See Storseth v. Spellman, 654 F.2d 1349, 1353 (9th Cir. 1981). A court may appoint counsel for indigent civil litigants pursuant to 28 U.S.C. § 1915(e)(1) under exceptional circumstances. Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009). When determining whether "exceptional circumstances" exist, a court must consider "the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved." Id. (quoting Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983)). For the reasons articulated above, petitioner has not demonstrated a likelihood of success on the merits of his motion under § 2255. In addition, there is no indication that petitioner's case involves legal issues so complex as to warrant designation of counsel. Consequently, because petitioner has failed to show the requisite exceptional circumstances in his case, his request for appointment of counsel is denied.

### III.    CONCLUSION

For the foregoing reasons, petitioner's motions are DENIED. The Court further finds that no evidentiary hearing is required because the record conclusively shows petitioner is not entitled to relief. See 28 U.S.C. § 2255(b). Likewise, petitioner has not substantially shown a denial of a constitutional right, and the Court concludes no certificate of appealability should issue. See id. § 2253(c)(2).

For the foregoing reasons, the Court ORDERS:

(1) Petitioner's motion, Dkt. # 1, is hereby DENIED;

(2) Petitioner's motion, Dkt. # 9, is hereby DENIED; and

(3) Petitioner is DENIED a certificate of appealability under 28 U.S.C. § 2253.

DATED this 3rd day of August, 2018.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge